Rosemary M. Rivas (State Bar No. 209147)
Email: rrivas@zlk.com
Quentin A. Roberts (State Bar No. 306687)
Email: qroberts@zlk.com
**LEVI & KORSINSKY, LLP**
44 Montgomery Street, Suite 650
San Francisco, California 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

Courtney E. Maccarone (to be admitted *pro hac vice*)
Email: cmaccarone@zlk.com
**LEVI & KORSINSKY, LLP**
30 Broad Street, 24th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 636-7171

*Counsel for Plaintiff Alexandr Bahcevan*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| ALEXANDR BAHCEVAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INTEL CORPORATION, a Delaware corporation,<br><br>Defendant. | Case No. 5:18-cv-00187<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Alexandr Bahcevan ("Plaintiff"), by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and their counsel, which are based on personal knowledge, against defendant Intel Corporation ("Intel" or "Defendant").

## NATURE OF THE ACTION

1.      Plaintiff brings this action against Intel on behalf of all persons in the United States who purchased an Intel x86-64x series central processing unit ("CPU") either separately or as a component of another product.

2.      Intel is the top-selling semiconductor company in the world.  There are approximately 1.5 billion personal computers in use today and approximately 90% are powered by Intel CPUs.  The x86-64x CPU is utilized in the majority of desktop, laptop computers, and servers in the United States. Products containing Intel CPUs are manufactured by companies such as Apple, Asus, Acer, Lenovo, Hewlett Packard, and Dell.

3.      A CPU is the part of a computer's hardware that performs the instructions of programs and controls the operations of the system.  In other words, the CPU is a computer's brain.

4.      Unfortunately, nearly every single Intel CPU is defective because they were designed by Intel in a way that allows hackers and malicious programs to access highly secure information stored on the units in which they are installed.[1]  The vulnerabilities have been named Spectre and Meltdown: "Meltdown" because it "melts security boundaries which are normally enforced by the hardware," and "Spectre" because its root cause is speculative execution, and "because it is not easy to fix, it will haunt us for quite some time.[2]

5.      Both Meltdown and Spectre operate by manipulating different ways the CPUs optimize performance by rearranging the order of instructions or performing different instructions in parallel.

---

[1] The affected CPUs include: Intel® Core™ i3 processor (45nm and 32nm), Intel® Core™ i5 processor (45nm and 32nm), Intel® Core™ i7 processor (45nm and 32nm), Intel® Core™ M processor family (45nm and 32nm), 2nd generation Intel® Core™ processors, 3rd generation Intel® Core™ processors, 4th generation Intel® Core™ processors, 5th generation Intel® Core™ processors, 6th generation Intel® Core™ processors, 7th generation Intel® Core™ processors, 8th generation Intel® Core™ processors, Intel® Core™ X-series Processor Family for Intel® X99 platforms, Intel® Core™ X-series Processor Family for Intel® X299 platforms, Intel® Xeon® processor 3400 series, Intel® Xeon® processor 3600 series, Intel® Xeon® processor 5500 series, Intel® Xeon® processor 5600 series, Intel® Xeon® processor 6500 series, Intel® Xeon® processor 7500 series, Intel® Xeon® Processor E3 Family, Intel® Xeon® Processor E3 v2 Family, Intel® Xeon® Processor E3 v3 Family, Intel® Xeon® Processor E3 v4 Family, Intel® Xeon® Processor E3 v5 Family, Intel® Xeon® Processor E3 v6 Family, Intel® Xeon® Processor E5 Family, Intel® Xeon® Processor E5 v2 Family, Intel® Xeon® Processor E5 v3 Family, Intel® Xeon® Processor E5 v4 Family, Intel® Xeon® Processor E7 Family, Intel® Xeon® Processor E7 v2 Family, Intel® Xeon® Processor E7 v3 Family, Intel® Xeon® Processor E7 v4 Family, Intel® Xeon® Processor Scalable Family, Intel® Xeon Phi™ Processor 3200, 5200, 7200 Series, Intel Atom® Processor C Series, Intel Atom® Processor E Series, Intel Atom® Processor A Series, Intel Atom® Processor x3 Series, Intel Atom® Processor Z Series, Intel® Celeron® Processor J Series, Intel® Celeron® Processor N Series, Intel® Pentium® Processor J Series, Intel® Pentium® Processor N Series (the "Affected CPUs").  *See Facts About the New Security Research Findings and Intel Products*, Intel.com, *https://www.intel.com/content/www/us/en/architecture-and-technology/facts-about-side-channel-analysis-and-intel-products.html* (last visited Jan. 4, 2018).

[2] *See Meltdown and Spectre*, SpectraAttack.com, https://spectreattack.com/ (last visited Jan. 5, 2018).

This means that an attacker who controls one process on a system can use the vulnerabilities to steal sensitive data from elsewhere on the computer. The vulnerability allows hackers to read information stored on a computer memory and steal sensitive data like passwords, Social Security numbers, credit card and banking information, and photographs.

6.    While Intel claims that security updates will make 90% of phones and PCs that use its CPUs "immune" to the vulnerabilities,[3] experts warn that the vulnerabilities result from a design flaw which is *unfixable*. While companies that design operating systems are now scrambling to develop patches that may provide a fix, experts warn that these are only temporary fixes and a more permanent solution will have to be physically built into future CPUs. Moreover, the temporary patches will dramatically degrade CPU's performance by as much as thirty percent.

7.    Defendant has not been able to offer an effective repair to its customers. A patch that dramatically cuts processor performance is not a legitimate solution, nor is any patch that does not fully address the security vulnerability.

8.    Accordingly, Affected CPU owners are left with the unfortunate choice of either (1) purchasing a new processor or computer containing a CPU that does not contain the defect, (2) continuing to use a computer with massive security vulnerabilities, or (3) continuing to use a computer with significant performance degradation.

9.    Defendant has admitted knowing of the design defect giving rise to the security vulnerabilities for at least six months. However, Defendant continued to manufacture, sell, and distribute its Affected CPUs without repair or disclosure of the defect.

10.    Plaintiff has suffered an ascertainable injury and a loss of money or property as a result of Defendant's wrongdoing because Plaintiff would not have purchased the Affected CPUs had he known of the security vulnerabilities or would not have paid the prices he paid for the Affected CPUs.

---

[3]    *See Intel Issues Updates to Protect Systems from Security Exploits*, Intel.com, *https://newsroom.intel.com/news-releases/intel-issues-updates-protect-systems-security-exploits/* (last visited Jan. 5, 2018).

CLASS ACTION COMPLAINT

**PARTIES**

11.     Plaintiff Alexandr Bahcevan is a citizen of the state of New York, residing in Brooklyn. Plaintiff has purchased at least one Affected CPU every year for the last five years.  Had Plaintiff known that the Affected CPUs were built with a design flaw leading to security vulnerabilities, Plaintiff would not have purchased the Affected CPUs or would have paid less for them.

12.     Defendant Intel Corporation is a Delaware corporation with its principal place of business located in Santa Clara, California.  At all relevant times, Defendant was engaged in the business of designing, manufacturing, distributing, and/or selling electronic computer products, including the defective Intel CPUs at issue.

**JURISDICTION AND VENUE**

13.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in this District, and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, including Intel's design and marketing of the Affected CPUs from its headquarters in Santa Clara, California, and that Intel's wrongful actions harmed consumers who live in this District and purchased the Affected CPUs in this District.

**INTRADISTRICT ASSIGNMENT**

15.     Pursuant to Civil L.R. 3-2(c), this civil action should be assigned to the San Jose Division, because a substantial part of the events or omissions giving rise to the claim occurred in the county of Santa Clara, where Intel is headquartered.

**APPLICATION OF CALIFORNIA LAW TO THE CLASS IS APPROPRIATE**

16.     Based upon information and belief, Intel's actions and representations alleged herein emanated from the State of California from its headquarters located in Santa Clara and Intel's business acts and practices complained of were centered in, carried out, effectuated, and perfected within or had

their effect in the State of California, and injured Plaintiff and all Class members.  Accordingly, the application of California law to the entire Class is appropriate.

## FACTUAL ALLEGATIONS

17.    The CPU of a computer is the piece of hardware that carries out the instructions of a computer program.  It performs the basic arithmetical, logical, and input/output operations of a computer system.  In other words, the CPU is like the brain of a computer.  Every instruction has to go through the CPU.

18.    One of the most important tasks that a CPU must perform is allowing a computer's operating system to interact with the computer's hardware.  The CPU does this by dedicating some of its processing power to this task.  This memory is known as kernel memory.

19.    The kernel inside an operating system is an invisible process that facilitates the way applications and functions work on a computer by talking directly to the hardware.  It has complete access to the operating system, with the highest possible level of permissions.

20.    On January 2, 2018, it was widely reported that a design defect in the Affected CPUs exposes the CPU's kernel to vulnerabilities that allow malicious users to gain access to sensitive data that is supposed to be protected by the kernel, such as passwords, Social Security numbers, credit card and banking information, and photographs.[4]

21.    At issue are two different vulnerabilities, dubbed "Meltdown" and "Spectre," that were independently discovered and reported by several security researcher groups including, but not limited to Cyberus Technology, Google, and the Graz University of Technology.

22.    Meltdown affects every Intel processor shipped since 1995 (with the exception of Intel Itanium and Intel Atom before 2013), although researchers said the flaw could impact other chip makers.  Spectre is a far more wide-ranging and troublesome flaw, impacting desktops, laptops, cloud servers, and smartphones from a variety of vendors.[5]

---

[4] *See, e.g.*, John Leyden, *Kernel-memory-leaking Intel processor design flaw forces Linux, Windows redesign*, TheRegister.co.uk, https://www.theregister.co.uk/2018/01/02/intel_cpu_design_flaw/ (last visited Jan. 5, 2018).

[5] *See Scary Chip Flaws Raise Spectre of Meltdown*, KrebsOnSecurity.com, https://krebsonsecurity.com/2018/01/scary-chip-flaws-raise-spectre-of-meltdown/ (last visited Jan. 5, 2018).

23.     The vulnerabilities allow access to an operating system's kernel memory because of how the CPUs handle "speculative execution," which modern chips perform to increase performance.[6]

24.     The *Register* reported on January 4, 2018:

> The severe design flaw in Intel microprocessors that allows sensitive data, such as passwords and crypto-keys, to be stolen from memory is real—and its details have been revealed.
>
> On Tuesday, we warned that a blueprint blunder in Intel's CPUs could allow applications, malware, and JavaScript running in web browsers, to obtain information they should not be allowed to access: the contents of the operating system kernel's private memory areas. These zones often contain files cached from disk, a view onto the machine's entire physical memory, and other secrets. This should be invisible to normal programs.
>
> Thanks to Intel's cockup—now codenamed Meltdown—that data is potentially accessible, meaning bad websites and malware can attempt to rifle through the computer's memory looking for credentials, RNG seeds, personal information, and more.[7]

25.     The *Register* continued, "[t]his is, essentially, a mega-gaffe by the semiconductor industry.  As they souped up their CPUs to race them against each other, they left behind one thing in the dust.  Security.[8]

26.     Intel is aware that its CPUs suffer from the defect that exposes the CPUs to critical security vulnerabilities, and has been for at least six months.  However, before informing the public about these major security vulnerabilities, Intel's CEO Brian Krzanich sold millions of dollars in stock after the company had been informed that since 1995 almost every processor it has manufactured has two severe security vulnerabilities.  Moreover, had Intel been performing proper tests and security checks of its CPUs, the vulnerabilities would have been evident far earlier.  With its access to proprietary information about its CPUs, there is no reason why three independent teams working

---

[6] Speculative execution attempts to improve speed by executing multiple instructions at once (or even in a different order than when entering the CPU).  To increase performance, the CPU predicts which path of a branch is most likely to be taken, and will speculatively continue execution down that path even before the branch is completed.  If the prediction is wrong, speculative execution is rolled back in a way that is intended to be invisible to software.

[7] *See* Chris Williams, *Meltdown, Spectre: The password theft bugs at the heart of Intel CPUs*, TheRegister.co.uk, https://www.theregister.co.uk/2018/01/04/intel_amd_arm_cpu_vulnerability/ (last visited Jan. 5, 2018).

[8] *See id.*

1  separately were able to discover Meltdown and two independent teams were able to discover Spectre,

2  but Intel did not.

3      27.    It was only on January 3, 2018, that Intel issued a press release in response to the

4  countless news media reports concerning the Affected CPUs, stating:

> Intel and other technology companies have been made aware of new security research describing software analysis methods that, when used for malicious purposes, have the potential to improperly gather sensitive data from computing devices that are operating as designed. Intel believes these exploits do not have the potential to corrupt, modify or delete data.
>
> Recent reports that these exploits are caused by a "bug" or a "flaw" and are unique to Intel products are incorrect. Based on the analysis to date, many types of computing devices—with many different vendors' processors and operating systems—are susceptible to these exploits.
>
> Intel is committed to product and customer security and is working closely with many other technology companies, including AMD, ARM Holdings and several operating system vendors, to develop an industry-wide approach to resolve this issue promptly and constructively. Intel has begun providing software and firmware updates to mitigate these exploits. Contrary to some reports, any performance impacts are workload-dependent, and, for the average computer user, should not be significant and will be mitigated over time.
>
> Intel is committed to the industry best practice of responsible disclosure of potential security issues, which is why Intel and other vendors had planned to disclose this issue next week when more software and firmware updates will be available. However, Intel is making this statement today because of the current inaccurate media reports.
>
> Check with your operating system vendor or system manufacturer and apply any available updates as soon as they are available. Following good security practices that protect against malware in general will also help protect against possible exploitation until updates can be applied.
>
> Intel believes its products are the most secure in the world and that, with the support of its partners, the current solutions to this issue provide the best possible security for its customers.[9]

22      28.    However, Defendant's press release is misleading because, among other reasons, while

23  it acknowledges the existence of the defect, it claims other vendors' (competitors) products also suffer

24  from the vulnerabilities, and downplays the performance impact which it claims "will be mitigated over

25  time."

---

[9] *See Intel Responds to Security Research Findings*, Intel.com, https://newsroom.intel.com/news/intel-responds-to-security-research-findings/ (last visited Jan. 5, 2018).

29.     Moreover, in a press release issued the following day on January 4, 2018, Intel claimed it has "developed and is rapidly issuing updates for all types of Intel-based computer systems—including personal computers and servers—that render those systems immune from both exploits."[10] However, key members of Google's Project Zero and data company Rambus stated that at least in Spectre's case, "this flaw is at such a level that it cannot be fixed by any old security patch.  Rather, *this is a hole baked into the very chips' design.*"[11]

30.     Plaintiff and Class members used Intel's products and had business dealings with Intel either directly or indirectly as described above.  The acts and practices of Intel have caused Plaintiff and Class members to lose money and property by being overcharged for and paying for the defective CPUs at issue, or being required to purchase an additional working CPU.  Such loss was the result of the above acts of unfair competition and Intel's misconduct, and injury occurred at the point of sale.

31.     Thus, the CPUs Defendant manufactured, installed, and sold in devices sold to Plaintiff and Class members were not merchantable and were not fit for the ordinary and particular purposes for which such goods are used in that the CPUs suffer from a critical design defect that leaves devices with an Intel CPU vulnerable to attacks by hackers.

32.     Thus, Plaintiff and Class members are left with CPUs that are slower and more vulnerable than what they bargained for.  They have CPUs that are not adequate for their ordinary purpose.  Plaintiff and other Class members would not have purchased their CPUs, or would not have paid as much for them, had they known the truth.

## CLASS ALLEGATIONS

33.     Plaintiff brings this action on behalf of himself and the members of the proposed Class under Federal Rule of Civil Procedure Rule 23(b)(2) and (3).  The proposed Class consists of the following:

> All persons in the United States who purchased an Affected CPU either from Intel, an authorized retail seller, or from a computer retailer or manufacturer who installed

---

[10]     *See Intel Issues Updates to Protect Systems from Security Exploits*, Intel.com, https://newsroom.intel.com/news-releases/intel-issues-updates-protect-systems-security-exploits/ (last visited Jan. 5, 2018).

[11]     *See* Joe Osborne, *Intel's chips to be 'immune' to Meltdown and Spectre after latest security updates*, TechRadar.com, http://www.techradar.com/news/intels-chips-to-be-immune-to-meltdown-and-spectre-after-latest-security-updates (last visited Jan. 5, 2018) (emphasis added).

an Affected CPU inside the customer's computer.

34.     Plaintiff reserves the right to redefine the Class prior to certification after having the opportunity to conduct discovery.

35.     Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, any entity in which Defendant has a controlling interest, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

36.     <u>Numerosity</u>.  Fed. R. Civ. P. 23(a)(1).  The members of the Class are so numerous that joinder is impractical.  The Class consists of millions of members, the precise number which is within the knowledge of and can be ascertained only by resort to Defendant's records.

37.     <u>Commonality</u>.  Fed. R. Civ. P. 23(a)(2) and (b)(3).  There are numerous questions of law and fact common to the Class, which predominate over any questions affecting only individual members of the Class.  Among the questions of law and fact common to the Class are:

     a)  Whether the Affected CPUs possess the Meltdown security flaw;

     b)  Whether the Affected CPUs possess the Spectre security flaw;

     c)  Whether Defendant made any implied warranties in connection with the sale of the Affected CPUs;

     d)  Whether Defendant breached any implied warranties relating to its sale of the Affected CPUs;

     e)  Whether Defendant was unjustly enriched as a result of its acts complained of herein;

     f)  Whether Defendant engaged in deceptive, unfair, and/or unlawful business practices under California law; and

     g)  Whether Class members are entitled to damages, and in what amount.

38.     <u>Typicality</u>.  Fed. R. Civ. P. 23(a)(3).  Plaintiff's claims are typical of the claims of the members of the Class.  The injuries sustained by Plaintiff and the Class flow, in each instance, from a common nucleus of operative facts based on Intel's uniform conduct as set forth above.  The defenses, if any, that will be asserted against Plaintiff's claims likely will be similar to the defenses that will be asserted, if any, against Class members' claims.  Moreover, Plaintiff has no interests antagonistic to the interests of any other member of the Class.

39.  <u>Adequacy</u>.  Fed. R. Civ. P. 23(a)(4).  Plaintiff is a representative who will fairly and adequately assert and protect the interests of the Class, and retained counsel experienced in prosecuting class actions.  Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

40.  <u>Superiority of Class Action</u>.  Fed. R. Civ. P. 23(b)(3).  A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct may be too small to warrant the expense of individual lawsuits.  The likelihood of individual Class members prosecuting their own separate claims is remote, and even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

41.  The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  Additionally, individual actions may be dispositive of the interests of the Class, although certain Class members are not parties to such actions.

42.  <u>Injunctive and Declaratory Relief</u>.  Fed. R. Civ. P. 23(b)(2).  The conduct of Defendant is generally applicable to the Class as a whole and Plaintiff seeks equitable remedies with respect to the Class as a whole.  As such, the systematic policies and practices of Defendant make declaratory or equitable relief with respect to the Class as a whole appropriate.

## COUNT I

**Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq*.**
**"Unfair" Business Practices**

**(Individually and on Behalf of the Class)**

43.  Plaintiff incorporates and realleges by reference each and every allegation above as if set forth herein in full.

44.     Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and lost money or property as a result of Defendant's actions, as set forth above.

45.     Defendant's actions as alleged in this Complaint constitute "unfair" business practices within the meaning of California Business and Professions Code §§ 17200, *et seq.*

46.     Defendant's business practices, as alleged herein, are "unfair" because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to their customers.   Additionally, Defendant's conduct is "unfair" because Defendant's conduct violated legislatively declared policies not to engage in misleading and deceptive conduct, or to not sell defective products.   Defendant also concealed material facts from consumers.

47.     As a result of Defendant's "unfair" business practices, Plaintiff and members of the Class spent money on computers containing CPUs that contained security vulnerabilities.

48.     Defendant's unfair business practices alleged herein constitute a continuing course of unfair competition.

49.     Plaintiff and the Class seek an order for injunctive relief to benefit the public, including a corrective advertising campaign, requiring Defendant to make full disgorgement and restitution of all monies wrongfully obtained from Plaintiff and the Class, and all other relief permitted under Bus. & Prof. Code §§ 17200, *et seq.*

## COUNT II

### Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.* "Deceptive" Business Practices

### (Individually and on Behalf of the Class)

50.     Plaintiff incorporates and realleges by reference each and every allegation above as if set forth herein in full.

51.     Defendant's actions as alleged in this Complaint constitute "deceptive" business practices within the meaning of Bus. & Prof. Code §§ 17200, *et seq.*

52.     Plaintiff does not allege a claim of common law fraud nor any claim in this Cause of Action that requires proof of intent.

53.     Defendant's business practices, as alleged herein, are "deceptive" because they were and are likely to deceive reasonable consumers, including Plaintiff and members of the Class, targeted by such omissions of material fact.

54.     Defendant failed to disclose material information to purchasers of computers containing the Affected CPUs by concealing the material fact that these CPUs contain the security vulnerabilities.

55.     As a result of Defendant's "deceptive" conduct, Plaintiff and members of the Class spent money on the Affected CPUs or on computers containing the Affected CPUs that suffer from security vulnerabilities.

56.     Defendant's deceptive business practices alleged herein constituted a continuing course of unfair competition.

57.     Plaintiff and the Class seek an order for injunctive relief to benefit the public, requiring Defendant to make full disgorgement and restitution of all monies that have been wrongfully obtained from Plaintiff and the Class, and all other relief permitted under Bus. & Prof. Code §§ 17200, *et seq*.

## COUNT III

### Breach of Implied Warranty

### (Individually and on Behalf of the Class)

58.     Plaintiff incorporates and realleges by reference each and every allegation above as if set forth herein in full.

59.     This claim is asserted on behalf of Plaintiff and the Class.

60.     Defendant is a "merchant" and the Affected CPUs are "goods" as defined under the Uniform Commercial Code.

61.     Pursuant to Uniform Commercial Code § 2-314, an implied warranty that goods are merchantable is implied in every contract for a sale of goods.  Defendant impliedly warranted that the Affected CPUs were of a merchantable quality.

62.     Defendant breached the implied warranty of merchantability because the Affected CPUs were and are not of a merchantable quality due to the security vulnerabilities and the associated problems and failures in the Affected CPUs caused by the vulnerabilities.

63.     Plaintiff's and each Class member's interactions with Defendant suffice to create privity of contract between Plaintiff and all other members of the Class, on the one hand, and Defendant, on the other hand; however, privity of contract need not be established nor is it required because Plaintiff and the absent Class members are intended third-party beneficiaries of contracts between Defendant and its resellers, authorized dealers, and specifically, of Defendant's implied warranties.

64.     Defendant's resellers, dealers, and distributors are intermediaries between Defendant and consumers.  These intermediaries sell the Affected CPUs to consumers and are not, themselves, consumers of the Affected CPUs, and therefore have no rights against Defendant with respect to Plaintiff's and all other Class members' purchases of Affected CPUs.  Defendant's warranties were designed to influence consumers who purchased the Affected CPUs, including products that contain them.

## COUNT IV

### Negligence

### (Individually and on Behalf of the Class)

65.     Plaintiff incorporates and realleges by reference each and every allegation above as if set forth herein in full.

66.     This claim is asserted on behalf of Plaintiff and the Class.

67.     Defendant owed a duty of care to Plaintiff and Class members, arising from the sensitivity of the information stored on computers and the foreseeability of Affected CPU's data safety shortcomings resulting in an intrusion, to exercise reasonable care in safeguarding sensitive personal information.  It also had a duty of care to ensure that its CPUs would function at the quality and speed levels it represented.  This duty included, among other things, designing, maintaining, monitoring, and testing its CPUs to ensure that Class members' data and computers were adequately secured and that the processors would function as promised.

68.     Defendant owed a duty to Plaintiff and Class members to implement processes that would detect a major defect in a timely manner.

69.     Defendant also owed a duty to disclose the material fact the Affected CPUs were defective.

70.    But for Intel's breach of its duties, Plaintiff and Class members would not have purchased the defective Affected CPUs or would not have paid as much for them as they did, and would not have been exposed to security risks and processor slowdowns.

## COUNT V

### Unjust Enrichment

### (Individually and on Behalf of the Class)

71.    Plaintiff incorporates and realleges by reference each and every allegation above as if set forth herein in full.

72.    This claim is asserted on behalf of Plaintiff and the Class.

73.    Plaintiff makes this claim in the alternative to the warranty claim set forth above.

74.    As a result of Defendant's material deceptive advertising, marketing, and/or sale of its Affected CPUs, Defendant was enriched at the expense of Plaintiff and all other Class members through their purchase of the Affected CPUs, because the Affected CPUs did not provide the benefits as represented.

75.    Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiff and the Class as the result of its unfair and deceptive practices. Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiff and the other members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class demand judgment against Defendant as follows:

A.    An order certifying that this Action may be maintained as a class action, that Plaintiff be appointed as the Class Representative, and his counsel be appointed Class Counsel;

B.    A judgment awarding Plaintiff and all members of the Class damages as alleged above incurred by Plaintiff and Class members as a result of Defendant's unlawful, deceptive, and unfair business and trade practices described herein;

C.    A judgment awarding Plaintiff and all members of the Class restitution or other equitable relief, including, without limitation, disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class as a result of their unlawful, unfair, and deceptive business

1 | practices described herein;

2 |         D.      An order enjoining Defendant from continuing to violate the laws as described herein;

3 |         E.      A judgment awarding Plaintiff the costs of suit, including reasonable attorneys' fees,

4 | and pre and post-judgment interest; and

5 |         F.      Such other and further relief as may be deemed necessary or appropriate.

6 | **JURY DEMAND**

7 | Plaintiff demands a trial by jury.

8 | Dated: January 9, 2018          **LEVI & KORSINSKY, LLP**

9 |             By: *_/s/Rosemary M. Rivas_*
10 |                Rosemary M. Rivas

11 |                Rosemary M. Rivas
               Quentin A. Roberts
12 |                44 Montgomery Street, Suite 650
               San Francisco, CA 94104
13 |                Telephone: (415) 291-2420
               Facsimile: (415) 484-1294

14 |                **LEVI & KORSINSKY, LLP**
15 |                Courtney E. Maccarone (to be admitted *pro hac vice*)
               30 Broad Street, 24th Floor
16 |                New York, New York 10004
               Telephone: (212) 363-7500
17 |                Facsimile: (212) 636-7171

18 |                *Counsel for Plaintiff Alexandr Bahcevan*

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |